UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY DEEGAN,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:19cv1356(MPS) |
| LIEUTENANT CALVIN WASHINGTON,<br>ET AL.,<br>    Defendants. | :<br>:<br>:<br>: |

## ORDER

The plaintiff, Anthony Deegan, is incarcerated at the Garner Correctional Institution. Pending before the court is an amended complaint naming Lieutenant Calvin Washington, Correctional Officers Moises Rosado and Rustam Demiraj, and Registered Nurse Shaniece Parker as defendants. For the reasons set forth below, the Eighth Amendment claims asserted in the amended complaint will proceed against the defendants in their individual and official capacities.

**I.    Background**

The plaintiff initiated this action by filing a complaint under 42 U.S.C. § 1983 against Correctional Officer John Doe #1, Correctional Officer John Doe #2, Lieutenant John Doe #3, and Nurse Jane Doe #1. The plaintiff alleged that on October 3, 2018 at Cheshire Correctional Institution ("Cheshire"), he fought with another inmate after the inmate assaulted him. In attempting to break up the fight between the plaintiff and the other inmate, Officers John Doe #1 and #2 used excessive force against the plaintiff. Lieutenant John Doe took no steps to intervene to stop the Doe Officers from using excessive force and Nurse Jane Doe failed to treat the injuries that the plaintiff had suffered during the altercation and as a result of the force used by the John Doe Officers. *See* Compl. at 4-7.

On November 13, 2019, after reviewing the complaint under 28 U.S.C. § 1915A, the court dismissed the Fourteenth Amendment claim, the Eighth Amendment failure to protect claim against Officers John Doe #1 and #2, and the Eighth Amendment deliberate indifference to health and safety claims against Lieutenant Doe.  The court concluded that the Eighth Amendment excessive force claims would proceed against Officers John Doe #1 and #2 in their individual and official capacities, the Eighth Amendment claim of failure to intervene would proceed against Lieutenant John Doe in his individual and official capacities, the Eighth Amendment deliberate indifference to medical needs claim would proceed against Nurse Jane Doe in her individual and official capacities, and the court would exercise supplemental jurisdiction over the state law assault and battery claims asserted against Officers Doe #1 and #2 in their individual and official capacities.  *See* IRO, ECF No. 8, at 11-12.

The court also granted the plaintiff's motion for appointment of counsel and appointed *pro bono* counsel for the limited purpose of assisting the plaintiff in filing an amended complaint to identify the Doe defendants.  *See id.* at 12.  Pro bono counsel appeared for the plaintiff on December 2, 2019 and filed an amended complaint on behalf of the plaintiff on March 27, 2020.  *See* ECF Nos. 12, 17.

## II.     Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II. Facts

On October 3, 2018, the plaintiff was housed in North Block #3 at Cheshire. *See* Am. Compl. at 4 ¶ 16. That evening, at approximately 8:45 p.m., the plaintiff was using the telephone on the top tier of North Block #3. *Id.* ¶ 21. Although North Block #3 was observing separate recreation periods, which meant that no inmate from the bottom tier should have been unsecured from his cell, a prison officer or official released an inmate from his cell on the bottom tier. *Id.* The inmate exited his cell, proceeded up the stairs to the top tier, and assaulted the plaintiff as he spoke on the telephone. *Id.* at 5 ¶ 22. The plaintiff tried to defend himself from the assault. *Id.*

Officers called a code indicating that an incident involving a fight between inmates was occurring and summoning other staff members to the area. *Id.* ¶ 23. Correctional Officers

3

Demiraj and Rosado attempted to break up the fight before additional staff members arrived. *Id.* ¶ 24.

Officer Demiraj ordered the plaintiff and the other inmate to stop fighting. *Id.* ¶ 25. The plaintiff promptly complied with the order by moving away from the other inmate and putting his hands up. *Id.* At that point, Officer Demiraj sprayed the plaintiff in the face and upper body with a chemical agent. *Id.* ¶ 26. The chemical agent was an unauthorized oleoresin capsicum ("OC") spray comparable to mace. *Id.* It is not clear whether Officer Demiraj brought the OC spray in from home or if it was issued to him from officials at Cheshire. *Id.* The OC spray caused significant pain to the plaintiff's eyes. *Id.* ¶ 27.

Although the plaintiff had complied with the order to stop fighting and was not acting in an aggressive manner, Officer Demiraj threw him to the ground. *Id.* ¶ 28. Officer Rosado kept the plaintiff on the ground placed him in handcuffs behind his back even though the plaintiff was not resisting or acting aggressively. *Id.* ¶ 29. The plaintiff was unable to relieve the burning effects of the OC while Officer Rosado held him on the ground in handcuffs. *Id.* ¶ 30. As a result of the use of force by Officers Demiraj and Rosado, the plaintiff suffered an injury to his head and continues to experience chronic headaches, head pain, and photosensitivity. *Id.* ¶ 36.

Lieutenant Washington was present when Officer Demiraj sprayed the plaintiff with OC spray and threw the plaintiff to the ground and when Officer Rosado held the plaintiff on the ground and applied handcuffs to his wrists. *Id.* at 7 ¶ 39. Lieutenant Washington and Officers Demiraj and Rosado escorted the plaintiff to the medical area to be decontaminated from the OC spray and to be treated for his visible scrapes and bruising and swelling to his face, head, and neck. *Id.* ¶ 44.

4

After arriving in the medical area, officers or medical staff members permitted the plaintiff to flush his eyes in a fountain for approximately ten seconds. *Id.* ¶ 45. The plaintiff requested additional time to flush his eyes because he was having difficulty opening them and he was experiencing pain from the OC spray. *Id.* Officers or medical staff members denied the plaintiff's request. *Id.*

The plaintiff complained of head pain and persistent pain from the effects of the OC spray. *Id.* ¶ 46. Nurse Parker conducted a perfunctory medical exam and cleared the plaintiff to be placed in a cell in the restrictive housing unit. *Id.* ¶¶ 46-47. Nurse Parker did not provide the plaintiff with any treatment or refer the plaintiff to be seen by a doctor regarding his complaints of head pain. *Id.* ¶ 47.

Later that evening, the plaintiff complained to an officer that he continued to suffer from head pain and believed that his nose may have been broken. *Id.* ¶ 48. The officer supplied the plaintiff with a bag of ice. *Id.*

The following day, a nurse, believed to be Nurse Parker, visited the plaintiff at his cell. *Id.* ¶ 49. The plaintiff stated that he thought his nose was broken, his head and eyes hurt, and he was experiencing blurry vision. *Id.* Nurse Parker took no action in response to the plaintiff's complaints. *Id.*

### III. Discussion

The plaintiff contends that the defendants violated his Eighth Amendment rights in various ways. Officers Demiraj and Rosado used excessive force against him, Lieutenant Washington failed to intervene to protect him from the use of force by Officers Demiraj and Rosado, and Nurse Parker was deliberately indifferent to his medical needs after the use of force.

5

The plaintiff also contends that the conduct of Officers Demiraj and Rosado constituted assault and battery under Connecticut law. He seeks injunctive relief from the defendants in their official capacities and compensatory, punitive, and nominal damages from the defendants in their individual capacities.

      A.      **Eighth Amendment – Excessive Force and Failure to Intervene**

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. To meet the objective component of the excessive force standard, an inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Id.* at 8 (internal quotation marks and citation omitted). The subjective component requires an inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7 (citing *Whitley*, 475 U.S. at 320-321). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *See Jean–Laurent v. Wilkinson*, 540 F. Supp. 2d

6

501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988).

The plaintiff alleges that even though he complied with Officer Demiraj's order to cease fighting with the other inmate, Officer Demiraj dispersed OC spray into his face and in the area of his upper body and threw him to the ground. Officer Rosado held the plaintiff on the ground with his hands behind his back and applied handcuffs to the plaintiff's wrists. The plaintiff suffered an injury to his head and continues to experience chronic headaches, head pain, and photosensitivity. These allegations state plausible claims that Officers Demiraj and Rosado used force for the purpose of causing the plaintiff pain or discomfort rather than for a legitimate penological purpose. Accordingly, the Eighth Amendment excessive force claims will proceed against Officers Demiraj and Rosado in their individual capacities. The Eighth Amendment claim that Lieutenant Washington was present and failed to intervene to attempt to temper or prevent the force used by Officers Demiraj and Rosado against the plaintiff, will also proceed.

**B.      Eighth Amendment – Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibits "deliberate indifference" by medical providers or prison officials to an inmate's "serious medical needs." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) . To state a claim for deliberate indifference to a serious medical need, a plaintiff must meet a two-pronged test. Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). The second prong is subjective. Under this prong, the plaintiff must allege that

7

the medical staff member or prison official "act[ed] or fail[ed] to act while *actually aware* of a substantial risk that serious inmate harm w[ould] result." *Spavone*, 719 F.3d at 138 (internal quotation marks and citation omitted).

The plaintiff claims that he suffered a head injury, head pain, scrapes, swelling, and bruising and a possible broken nose during the incident involving his altercation with another inmate and the use of force by Officers Demiraj and Rosado and that he experienced pain and blurry vision from the chemical agent that Officers Demiraj and Rosado dispersed into his face and upper body. The court concludes that the plaintiff has plausibly alleged that he suffered from one or more serious medical conditions at the time that Nurse Parker examined him. *See Sadowski v. Dyer*, No. 3:18-CV-1074(KAD), 2019 WL 2085994, at *7 (D. Conn. May 13, 2019) (severe head pain and headaches, "possible concussion[,]" and "intermittent dizziness and blurred vision" constituted medical conditions that were plausibly serious); *Parsons v. City of New York*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) ("Injuries or pain resulting from being sprayed with mace sufficiently establish the existence of a serious medical need deserving of medical attention.")

The plaintiff has also asserted enough facts to state a plausible claim that he made Nurse Parker aware of his medical conditions or symptoms, a head injury, the painful effects of the chemical agent on his skin, blurry vision, and the possibility that he had broken his nose, but she failed to provide him with or facilitate treatment for the conditions or symptoms. *See, e.g.*,; *Al-Bukhari v. Semple*, No. 3:16-CV-1428 (SRU), 2017 WL 2125746, at *4 (D. Conn. May 16, 2017) (prisoner stated Eighth Amendment claim for deliberate indifference to serious medical needs by "alleg[ing] that he informed the correctional officers and nurses that he was suffering

8

from extreme pain as a result of being sprayed with a chemical agent and the staff repeatedly denied his requests for an adequate shower to clean himself and decontaminate the agent.") The Eighth Amendment deliberate indifference to medical needs claim will proceed against Nurse Parker in her individual and official capacities.

      **C.**      **State Law Claims - Assault and Battery**

The plaintiff alleges that the conduct of Officers #1 and #2 in spraying him in the face and body with a chemical agent and throwing him to and holding him on the ground with his hands secured behind his back constituted the torts of assault and battery. In Connecticut, there are two elements of the tort of civil assault: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person, and (2) the other person was actually "put in imminent apprehension" as a result of the contact. *See Simms v. Chaisson*, 277 Conn. 319, 331, 890 A.2d 548, 555-56 (2006) (internal quotation marks and citation omitted). The tort of battery also requires two elements: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person, and (2) "a harmful contact with the" other person results either "directly or indirectly." *Id.* at 331, 890 A.2d at 555 (internal quotation marks and citation omitted).

Because the court has concluded that the claims of excessive force should proceed against Officers Demiraj and Rosado and those claims are based on the same facts as the assault and battery claims, the court will exercise supplemental jurisdiction over the state law assault and battery claims. Those claims will proceed against Officers Demiraj and Rosado in their individual and official capacities.

9

**ORDERS**

The court enters the following orders:

**(1)** The Eighth Amendment excessive force claims will proceed against Officers Demiraj and Rosado in their individual and official capacities, the Eighth Amendment claim of failure to intervene will proceed against Lieutenant Washington in his individual and official capacities, and the Eighth Amendment deliberate indifference to medical needs claim will proceed against Nurse Parker in her individual and official capacities. The court will exercise supplemental jurisdiction over the state law assault and battery claims asserted against Officers Demiraj and Rosado in their individual and official capacities.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the Amended Complaint, [ECF No. 17], and a copy of this Order on Lieutenant Calvin Washington, Correctional Officer Moises Rosado, Correctional Officer Rustam Demiraj and Registered Nurse Shaniece Parker in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

**(3)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of Lieutenant Calvin Washington, Correctional Officer Moises Rosado, Correctional Officer Rustam Demiraj and Registered Nurse Shaniece Parker and mail a copy of the Amended Complaint, [ECF No. 17], a copy of this Order, and a waiver of service of process request packet to each Defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request. If a

Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that Defendant, who shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(4)** Defendants Washington, Rosado, Demiraj, and Parker shall file their response to the Amended Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(5)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the Court.

**(6)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(7)** The Clerk shall send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

**(8)** The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Hartford, Connecticut this 9th day of April, 2020.

_____/s/_____
Michael P. Shea
United States District Judge